**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COOKEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 2:11-00003** |
| | ) | **Judge Sharp** |
| **WILLIAM EARL MCGUIRE, JR.** | ) | |

**MEMORANDUM**

Pending before the Court are Defendant William Earl McGuire, Jr.'s Motion to Suppress Identification (Docket No. 76); Motion to Dismiss Indictment or Require Mandatory Election of Offenses (Docket No. 77); Motion to Compel Discovery (Docket No. 78); and Motion to Sever Counts Three Through Seven (Docket No. 91) of the Second Superseding Indictment. The Court considers the Motions in the order presented.

## I. Motion to Suppress Identification (Docket No. 76)

Pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, Defendant requests that the Court suppress the testimony of Officer Rickie Morris, Christopher LaFlame, and Juanita Toon concerning the alleged identification of Defendant at a photo lineup conducted on October 29, 2011. The alleged identification was made by the victims of an armed home invasion which occurred ten days earlier near Springfield, Tennessee.

In response, the Government indicates it does not intend to offer the testimony of any of those three witnesses during the trial of this case. Accordingly, Defendant's Motion will be denied as moot, although Defendant is free to renew this Motion should the Government attempt to call any of these three witnesses at trial, or should it appear that the Government is attempting to introduce evidence which arose solely as a result of the alleged identification.

1

**II. Motion to Dismiss Indictment or Require Mandatory Election of Offenses (Docket No. 77)**

In Count One of the Second Superseding Indictment, Defendant is charged with conspiring with Defendants Joshua Caldwell ("Caldwell") and Derrick Linder ("Linder") to distribute marijuana and to manufacture and distribute methamphetamine in violation of 28 U.S.C. § 846. Defendant is also charged in three other counts – Counts Two, Three and Four – with firearm violations in relation to a short-barreled New England Firearms Model SB1 20-gauge shotgun, which Defendant characterizes as "being based solely on the alleged possession of this shotgun." (Docket No. 77 at 2).

Defendant summarizes Counts Two through Four as being "(1) one count of possessing a firearm within a three-month period; (2) one count of possessing the same firearm within a four month period that overlaps the three-month period; and (3) one count of possessing the same firearm on a specified date that is one day later than the last day of the three-month period, but that falls within the four-month period." (Id.). If this were a full and accurate description of the charges contained in Counts Two through Five, there might be some merit to Defendant's assertion that the three charges related to one weapon violates the Due Process Clause of the Fifth Amendment.

The Fifth Amendment prevents persons from being "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "That clause protects criminal defendants from prosecution following conviction or acquittal for the same offense, and also prohibits infliction of 'multiple punishments for the same offense imposed in a single proceeding.'" Jones v. Harry, 405 F3d. Appx. 23, 28 (6th Cir. 2010) (quoting, Jones v. Thomas, 491 U.S. 376, 381 (1989)). "Normally,

courts apply the 'same-elements' or <u>Blockburger</u> test [1] – which 'inquires whether each offense contains an element not contained in the other' – to determine whether two offenses are identical for double-jeopardy purposes." <u>United States v. Goff</u>, 400 Fed. Appx. 1, 5 (6th Cir. 2010) (footnote added) (quoting, <u>United States v. Dixon</u>, 509 U.S. 688, 696 (1993)).  "The applicable rule" under <u>Blockburger</u> "is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." <u>Blockburger</u>, 284 U.S. at 304.

In this case, Defendant is not simply charged with possession of the shotgun over three different, albeit overlapping, time periods.  Rather, he is charged with three separate crimes in relation to that shotgun, to wit:  (1) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); (2) possession of a firearm which was not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count Three); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count Four).

Each of these crimes, while sharing the common element of possession of the same gun, contain elements which the others do not.  Count Two requires possession of a firearm in furtherance of a drug trafficking crime, an element not found in the other two counts. <u>See</u>, <u>United States v. Grant</u>, 214 Fed. Appx. 518, 520 (6th Cir. 2007) ("three essential elements [are required] to establish [a defendant's] guilt under § 924(c)(1)(A):  (1) possession of a firearm; (2) commission of a drug

---

[1] The "<u>Blockburger</u> test" is derived from the Supreme Court's decision in <u>Blockburger v. United States</u>, 284 U.S. 299, 304 (1932).

trafficking offense; and (3) a specific nexus between that possession and the relevant drug trafficking offense."). Count Three requires the Government prove that a defendant "knew of the features of his [weapon] that brought it within the scope of the Act," Staples v. United States, 114 S.Ct. 1793, 1804 (1994), and "proof that the defendant 'receive[d] or possess[ed] a firearm which is not registered to him in the National Firearms Registration and Transfer Record'" United States v. Dotson, 2011 WL 6005196 at *5 (6th Cir. Dec. 2, 2011) (citation omitted), both of which are elements not found in Counts Two or Four. Finally, Count Four requires that the defendant have been previously convicted of a crime punishable by imprisonment for a term exceeding one year, and that the firearm previously moved in (or affected interstate commerce), United States v. Campbell, 436 Fed. Appx. 518, 528 (6th Cir. 2011), both elements not found in Counts Two or Three.

Defendant's reliance on Ball v. United States, 470 U.S. 856, 862–63 (1985) is misplaced. There, the Supreme Court held that convictions for possessing and receiving the same firearm violated the Double Jeopardy Clause. "As a matter of plain meaning, one obviously cannot 'receive' an item without then also 'possessing' that item, even if only for a moment." United States v. Ehle, 640 F.3d 689, 695 (6th Cir. 2011). But one can possess a firearm in furtherance of a drug trafficking crime or possess an unregistered firearm without previously have been adjudicated a felon, a felon can possess an unregistered firearm without using it in furtherance of a drug trafficking crime, and a felon can use a properly registered firearm in furtherance of a drug trafficking crime.

Defendant's reliance upon United States v. McKinney, 919 F.2d 405 (7th Cir. 1990) is even more attenuated. There, after the execution of search warrant on a home in which drugs and six firearms were found, the defendant was charged with, and subsequently found guilty of, possession

with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and unlawful possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant was sentenced for each of the firearms possessed which the Seventh Circuit found to be a violation of the Double Jeopardy Clause because he "was convicted of one narcotics transaction in which he used, and as a convicted felon, possessed a firearm," but "he was sentenced on six counts" for the six weapons seized. Id. at 417.

Contrary to Defendant's assertion, this case is not "factually similar" to McKinney. (Docket No. 77 at 5). Defendant is not charged with several violations of being a felon-in-possession as in McKinney. Rather, he is charged with being a felon-in-possession, possessing a firearm in relation to a drug trafficking offense, and failure to register the firearm. This case would be "factually similar" if the Seventh Circuit took issue with separate sentences for being a felon-in-possession and utilizing a firearm during a drug trafficking crime, but it specifically found no double jeopardy problem under Blockburger because "Section 924(c)(1) is a penalty for a felon who possesses a firearm, while section 924(g)(1) [sic] addresses Congress' concern with the more heinous crime of drug trafficking with a firearm." McKinney, 919 F.2d at 417.

Without citation to authority, Defendant also argues that the Double Jeopardy Clause will be violated because "the 924(c) charge will require a sentence consecutive to any other sentence [Defendant] faces, including one imposed for any of the other charges relating to the exact same act of firearm possession." (Docket No. 77 at 6). Although Defendant acknowledges this could be viewed as a sentencing matter, he insists its resolution is imperative now because "the Court may have *no* discretion in his sentencing." Id. (italics in original).

The Supreme Court has stated that when multiple sentences are imposed in the same trial, "the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Brown v. Ohio, 432 U.S. 161, 165 (1977). "Thus, if a legislature permits multiple punishments, a court can impose such punishments; if a legislature prohibits multiple punishments, a court cannot impose such punishments without running afoul of the federal prohibition against double jeopardy." Palmer v. Haviland, 273 Fed. Appx. 480, 484 (6th Cir. 2008).

Here, Congress has chose to provide separate punishments for being a felon-in-possession of a firearm, possessing a firearm in relation to a drug trafficking offense, and failing to register certain firearms. Defendant has not shown that separate punishment for those crimes will result in punishment twice for the same crime in violation of the Double Jeopardy Clause, and case authority suggests otherwise.[2] United States v. Muhammad, 250 Fed. Appx. 208, 212 (9th Cir. 2007 (consecutive sentences for violation of section 924(c)(1) and 922(g)(1) do not violate the Double Jeopardy Clause); United States v. Hayes, 1994 WL 262055 at *7 (6th Cir. June 14, 1994) ("all circuits that have addressed th[e] argument" have rejected the notion that sentences for violation of Section 922(g)(1) and 924(c)(1) violate the double jeopardy clause); United States v. LaFromboise, 105 F.3d 512, 513-14 (9th Cir. 1997) (consecutive sentences for violations of Section 5861(d) and Section 924(c) do not violate the double jeopardy clause); United States v. Seibert, 121 Fed. Appx. 715, 716 (9th Cir. 2005) (district court did not err in imposing a separate sentence for possessing a sawed-off shotgun and being a felon-in-possession of a sawed-off shotgun "because they are not the

---

[2] This observation is not intended in any way to foreclose Defendant from raising appropriate sentencing arguments should they, in fact, become necessary.

same thing").

### III.  Motion to Compel Discovery (Docket No. 78)

By way of this motion, Defendant moves for a number of items of discovery from the Government.  In its response, the Government asserts that "[i]t provided discovery in this case to the defendant's attorney on October 14, 2011," and "[i]ncluded in that discovery were all items known to the Government required to be disclosed by Rule 16, Federal Rules of Criminal Procedure, and Local Criminal Rule 16.01."  (Docket No. 90 at 1).  Further, with regard to the specific requests made by Defendant, the Government states: (1) there is no laboratory analysis of the methamphetamine or any documentation which sets forth the amount of methamphetamine defendant is accused of manufacturing and/or distributing; (2) it does not possess the photo spread shown to the victims of the home invasion and, in any event, does not intend to call any of the victims at trial; (3) Defendant's statements to Government agents have previously been produced; (4) the Government is unaware of any <u>Brady</u> material, and has so informed Defendant in writing; (5) to the extent Defendant's <u>Brady</u> request actually seeks <u>Giglio</u> material, the same will be provided at trial[3]; and (6)  duplicates of the tape recordings of marijuana sales will be provided to Defendant by February 24, 2012.

The Court accepts these representations as true, <u>see</u>, <u>United States v. Cole</u>, 2007 WL 2600920 at *5 (M.D. Tenn. 2007), and Defendant has not challenged any of these representations, even though he was given until February 23, 2012, within which to file a reply to the Government's

---

[3]  Pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 450 U.S. 150 (1972), the Government is required to disclose exculpatory and impeachment information to a defendant.  "'As a general matter, a defendant has no constitutional right to receive either <u>Brady</u> or <u>Giglio</u> material prior to trial," and "'district courts have the authority to determine, as a matter of sound case management, when the Government shall disclose <u>Brady</u> and <u>Giglio</u> material.'"  <u>United States v. Pray</u>, 764 F.Supp. 2d 184, 189 (D.C.C. 2011) (citations omitted).

response to his request for discovery. (Docket No. 87).

As for the remaining items, Defendant has not shown any entitlement to the discovery provided to his co-defendants. Defendant cites Fed. R. Crim. P. 16(a)(1), but, as he recognizes, that rule applies to organizational defendants, and Defendant is not "an organization" as required by the rule.

Further, Defendant seeks the identity of confidential informants. In so doing, Defendant "recognize[s] that the disclosure of informants is not favored in the law, but is required by Due Process when the informant was, in fact, a witness to the criminal offense, which is the circumstance here." (Docket No. 78 at 3). The Government has indicated that it will reveal its witnesses and provide Jencks Act material[4] to the Defendant one week prior to trial. This is a reasonable solution given the Government's position that Defendant has "a history of witness intimidation and violent conduct," is allegedly affiliated with the Aryan Nation. (Docket No. 90 at 2). See, United States v. Gaines, 2009 WL 2849733 at *4 (M.D. Tenn. Sept. 2, 2009) (pursuant to Perkins, pre-trial identification of an informant's identity was not required even though informant was precipient witness); United States v. Brice, 2009 WL 2043554 at *1 (W.D. Ky. July 9, 2012) ("where the informant testifies, the government need not have disclosed his identity prior to trial"); Pray, 764 F. Supp.2d at 189 (citation omitted) ("interests of justice would not be served by premature release of information that could compromise the security and safety of witnesses and informants who have been cooperating with law enforcement").

### IV. Motion to Sever Counts Three Through Seven (Docket No. 91)

---

[4] Under the Jencks Act, prior statements or reports of government witnesses are required to be disclosed after the "witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).

As previously noted, Defendant is charged with three separate firearm counts (Counts Two, Three and Four) and, along with Linder and Caldwell, with possessing and distributing marijuana, and manufacturing and distributing methamphetamine (Count One). In addition to those charges, Caldwell is charged in Count Five with escape, and Linder in Counts Six and Seven with possession with the intent to distribute marijuana and methamphetamine and possession of a firearm in furtherance of those crimes. Defendant moves to sever Counts Three through Seven, arguing that they were improperly joined under Fed. R. Crim. P. 8(a) and/or that the Court should sever those counts pursuant to Fed. R. Crim. P. 14.

> Rule 8 of the Federal Rules of Criminal Procedure provides:
>
> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8. Defendant relies upon subsection (a) of the rule, and argues that the felon-in-possession and failure to register a firearm counts, and the counts against his co-defendants are misjoined.[5]

---

[5] It is unclear whether the focus should be on Rule 8(a), as opposed to Rule 8(b). "Traditionally, courts have held that Rule 8(a) applies only to a prosecution of a single defendant, and that Rule 8(b) applies exclusively whenever multiple defendants are involved, even if a defendant is contesting only the joinder of counts against himself." United States v. Frost, 125 F.3d 346, 389 (6th Cir. 1997); see also, Zirker v. United States, 253 Fed. Appx. 573, 576 n.3 (6th Cir. 2007) (while "this Sixth Circuit has yet to decide whether it will follow the majority rule, . . . the weight of authortity from outside this Circuit suggest that Rule 8(b) applies in most cases involving more than one defendant"). "The primary difference between the two sections is that it is easier to justify joinder under Rule 8(a) because, unlike Rule 8(b), it also permits joinder of offenses

"Rule 8(a) 'should be construed in favor of joinder,' but 'it is also true that failure to meet the requirements of this rule constitutes misjoinder as a matter of law.'" United States v. Deitz, 577 F.3d 672, 691 (6th Cir. 2009) (quoting, United States v. Hatcher, 680 F.2d 438, 440 (6th Cir.1982)). "Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment, and, "[i]n most cases, the absence of evidence at trial linking two sets of charges results in misjoinder only if the indictment was drawn up in bad faith – *i.e.* where the government knew it could not prove a link between the charges at trial." Id.

In this case, there is no suggestion that the Indictment was drawn up in bad faith, and there is a relationship between the charges. Counts One is inextricably intertwined with Count Two inasmuch as it is alleged that a firearm was used in relationship to the underlying drug trafficking crime. Counts Three and Four are related to Counts One and Two in that those charges involve the same firearm possessed during the drug trafficking crime. See, United States v. Chavis, 296 F.3d 450, 459 (6th Cir. 2002) ("'tools of the trade' . . . generally permits joinder . . . when the firearms charges and the drug charges are 'sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan,' as when guns are used in connection with the drug offense or when both guns and drugs are uncovered in the same search'). Count Five is related to Count One in that Caldwell is alleged to have escaped from custody while being held on the charges contained in Count One. See, United States v. Turner, 134 Fed. Appx. 17, 22 (6th Cir. 2005) ("It is well established that a charge of escape or bail jumping and the underlying substantive offense are sufficiently connected to permit joinder under Fed. R. Crim. P.

_____

which are merely of 'the same or similar character.'" Frost, 125 F.3d at 389 (qutoing, Fed. R. Crim P. 8(a)). Regardless, since the Defendant makes his arguments under Rule 8(a) the Court will analyze them under that provision, but notes that its conclusion would remain the same even under Rule 8(b).

8(a)"). Finally, Counts Six and Seven are related to Count One because Linder is once again alleged to have dabbled in marijuana and methamphetamine and, on that occasion, possessed a firearm during and in relation to that crime.

Notwithstanding the propriety of joiner, "if the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Ths Sixth Circuit has summarized its case law in relation to severance in criminal cases as follows:

> "[A] strong policy presumption exists in favor of joint trials when charges will be proved by the same evidence and result from the same acts.". . . Society has an interest in speedy and efficient trials. . . . Separate trials produce additional labor for judges and juries, which results from the unnecessary repetition of evidence and trial procedures. Moreover, the risk of prejudice to defendants in a joint trial is presumably low, because "juries are presumed capable of sorting evidence and considering separately each count and each defendant.". . . These considerations are overcome "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable determination about guilt or innocence.". . . Thus, "a defendant seeking severance at trial bears a strong burden and must demonstrate substantial, undue, or compelling prejudice."

United States v. Caver, 470 F.3d 220, 238 (6th Cir. 2006) (internal citations omitted). The decision of whether to grant severance is in the sound discretion of the trial court. United States v. Tran, 433 F.3d 472, 478 (6th Cir. 2006).

Turning first to Counts Five through Seven, the Court is not persuaded that Defendant will be prejudiced by the trial of charges which implicate only Linder and Caldwell. "'[A] request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants.'" United States v. Driver, 535 F.3d 424, 427 (6th Cir. 2008) (citation omitted). To minimize any potential prejudice to Defendant, the Court will give the jury the standard Sixth Circuit pattern instructions relating to separate consideration for each defendant and

each crime charged. Zafiro v. United States, 506 U.S. 534, 538 (1993) ("limiting instructions, often will suffice to cure any risk of prejudice").

Turning to the firearm charges against Defendant, it is clear that trying Counts One and Two together is proper and a severance is not warranted because Count Two alleges Defendant possessed a firearm in relation to the drug trafficking conspiracy set out in Count One. Trying Count Four (and to a lesser extent Count Three) at the same time as the other charges against Defendant is a bit more problematic.

On the one hand, prejudice from the failure to sever a felon-in-possession count from a drug count may be rectified by curative instructions, instructions which jurors are presumed to follow. See, United States v. Turner, 134 Fed. Appx. 17, 22 (6th Cir. 2005); United States v. Ford, 872 F.2d 1231, 1239 (6th Cir. 1989). On the other hand, there are "obvious dangers inherent in trying a felon-in-possession count together with other charges, as it acts as a conduit through which the government may introduce otherwise inadmissible evidence of the defendant's prior convictions, thereby potentially tainting the reliability of the verdict rendered by the jury on the other counts." United States v. McCarter, 316 F.3d 536, 538 (5th Cir. 2002); see, United States v. Atchley, 474 F.3d 840, 852 (6th Cir. 2007) ("Whether [felon-in-possession counts] should be severed under Rule 14(a) is a closer question because it requires the jury to know that [defendant] was convicted of prior offenses"); United States v. Hatches, 75 Fed. Appx. 188, 190 (4th Cir. 2003) ("the introduction of a previous felony for purposes of establishing a felon-in-possession charge can be prejudicial to a criminal defendant charged in a multiple count indictment").

Short of severance and separate trials, however, a court can reduce the potential for prejudice by bifurcating a felon-in-possession count from the other counts. See, United States v. McCode, 317

Fed. Appx. 27, 212 (3rd Cir. 2009) (court did not abuse its discretion in failing to sever felon-in-possession count from other counts, "particularly . . . given that the District Court agreed to conduct the jury trial in two stages, thereby bifurcating the felon-in-possession counts. . . from the robbery-related counts");  United States v. Piper, 2010 WL 2612584 at *2 (M.D. Pa. June 25, 2010) (court would not sever felon-in-possession counts from drug counts, but would bifurcate those counts, "a  practice we have frequently and successfully implemented when faced with a defendant charged in a single indictment both with a drug offense and with being a felon-in-possession of a firearm").  This procedure not only aids a defendant by lessening the potential prejudice, but also reduces the burden on the public and conserves the judicial resources that two trials would require. See, United States v. Jaimes-Cruz, 2009 WL 225065 at *2 (E.D.N.C. July 24, 2009) (noting that "a bifurcated trial may mitigate the effect of some of the inefficiencies that arise from severance").  As one court in this circuit[6]  has recently stated:

> Here, trying the felon-in-possession counts after the other counts in the Indictment would be only a minor burden on the public.  It would not take much time to present the evidence of the felon-in-possession counts to the same jury after they reach a verdict on the other counts.   On  the other hand, there is a real possible prejudice in the jury knowing Defendant is a convicted felon.

United States v. Eubanks, 2009 WL 3171993 at *4 (W.D. Ky. 2009).

The observations set forth in Eubanks are equally applicable here, and the Court will therefore bifurcate Count Four.  Moreover, because Count Four will require testimony about whether the shotgun is a firearm that traveled in interstate commerce, and Count Three requires testimony about whether the firearm met the statutory requirements for registration and was not registered, it

---

[6]The Court notes that in United States v. Moore, 276 F.3d 570, 573 (6th Cir. 2004) and United States v. Underwood, 1996 WL 53796 (6th Cir. Sept. 20, 1996), the Sixth Circuit discussed bifurcation in the context of felon-in-possession cases.  However, those cases dealt with the propriety of bifurcating the *elements* of a felon-in-possession count, not the propriety of bifurcating a felon-in-possession count from other charges.

makes sense to try those two counts together because there is a possibility that testimony may be presented by some of the same witnesses on both counts. Moreover, the intricacies of whether the shotgun was "sawed-off" for purposes of the registration requirement are not relevant to whether Defendant was involved in a drug conspiracy or carried a firearm in relation to that conspiracy. Accordingly, the Court will bifurcate Counts Three and Four and try those counts to the same jury after it returns a verdict on the other counts.[7]

## V.  CONCLUSION

On the basis of the foregoing, Defendant McGuire's Motion to Suppress Identification (Docket No. 76), his Motion to Dismiss Indictment or Require Mandatory Election of Offenses (Docket No. 77), his Motion to Compel Discovery (Docket No. 78), and his Motion to Sever Counts Three Through Seven (Docket No. 91) will be denied except that, in relation to the last Motion, the Court will bifurcate Counts Three and Four of the Second Superceding Indictment and try those counts to the same jury immediately after the trial on the other counts.

An appropriate Order will be entered.

_Kevin H. Sharp_
_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

---

[7] The efficacy of this approach will be undermined if Defendant decides to testify in the initial trial. In fact, it was for that very reason that the court in Eubanks decided to stay its ruling and make its bifurcation "determination at trial." Eubanks, 2009 WL 3171993 at * 4. Contrary to the approach taken by the court in Eubanks, however, this Court will not wait until trial to make the bifurcation determination because, as is often the case, the Court may not know whether Defendant intends to testify until after the Government has presented its case-in-chief.